UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,                      Case No. 3:11-cv-00832-HA

    Plaintiff,                           OPINION AND ORDER

    v.

FRED MEYER STORES, INC.,

    Defendant.

---

HAGGERTY, District Judge:

    Plaintiff initiated this action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and to provide relief to a class of current and former employees of defendant. Specifically, plaintiff alleges that defendant subjected the class members to a sexually hostile work environment because of their female sex. Plaintiff filed a Motion for Partial Summary Judgment [126], requesting that this court strike defendant's Affirmative Defenses 16, 18, 19, 20, 22, 24, 26, 27, and 30. In the alternative, plaintiff requests summary judgment on the same affirmative defenses. Defendant also filed a Motion for Partial Summary Judgment [121], asserting that plaintiff cannot establish that Class Members Kelly O'Neal, Courtney McMurray, Deborah Atlee, and Addie Humiston were subjected to a hostile work environment as a matter of law.

Defendant also asserts that Humiston signed two settlement agreements releasing defendant of Title VII claims. The court heard oral arguments on May 30, 2013.

## FACTUAL BACKGROUND

This case involves events that occurred in a retail department store in Oak Grove, Oregon, owned by Fred Meyer Stores, Inc. ("defendant"). Plaintiff is the U.S. Equal Employment Opportunity Commission ("EEOC" or "plaintiff"), which is a governmental agency responsible for enforcing federal employment discrimination laws. Plaintiff's claims originate from repeated interactions between Charles Janac, a regular customer of the Oak Grove store, and several current and former employees of the store - Laura Morrow, Kelly O'Neal, Victoria Settle, Janet Dudley, Deborah Atlee, Addie Humiston, and Courtney McMurray. These listed class members and a class of similarly situated individuals allege that they were sexually harassed by Janac on multiple occasions and defendant failed to adequately address the problem, despite its knowledge of it.

Management of the Oak Grove store was first made aware of Janac's conduct in 2007, when McMurray complained that Janac had reached down her shirt. In 2008, Atlee reported to Loss Prevention Management, the department tasked with reducing liability associated with accidents in the store, that an older customer attempted to grab her breast. After Janac pressed his body against Humiston and attempted to touch her several times, Humiston complained of Janac's behavior to Apparel Manager Pat McPhee and Assistant Apparel Manager Darla Anderson. In the beginning of 2009, Janac patted Settle's breast and she complained to Assistant Manager Tom Banks. In April 2009, Janac poked O'Neal in the breast, but she did not report the

incident to managers. Later in 2009, Janac grabbed Morrow's breast.[1]

Morrow filed a charge with the EEOC, alleging violations of Title VII by defendant. On July 12, 2011, plaintiff filed a complaint in which it alleges that defendant engaged in unlawful practices in violation of 42 U.S.C. § 2000e-2(a) by subjecting Morrow and the class members to harassment because of their sex. The parties each filed a motion for partial summary judgment. Each motion will be addressed separately below.

## STANDARDS

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c); *Bahn v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). The moving party carries the initial burden of proof and meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the initial burden is satisfied, the burden shifts to the non-moving party to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.*

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *MetroPCS, Inc. v. City & County of S.F.*, 400 F.3d 715, 720 (9th Cir. 2005)

---

[1] The facts above are not exhaustive. The present motions concern the events surrounding McMurray, Atlee, Humiston, and O'Neal only. The interactions between each of these class members and Janac are discussed in further detail when defendant's Motion for Partial Summary Judgment is addressed, below.

(citation omitted). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981) (citing Fed. R. Civ. P. 56©).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).

## DISCUSSION

### A.    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

As an initial matter, defendant sets forth many objections to evidence offered by plaintiff in its Motion for Partial Summary Judgment. More specifically, defendant objects to the manner in which plaintiff describes the testimony of several deponents. For each objection, defendant states plaintiff's description of the testimony and directs the court to the relevant pages of the applicable deposition transcript. For example, defendant takes issue with plaintiff stating that Shonna Kimble "recall[ed] that a clerk got touched on her breast by a customer while she was the manager at Oak Grove." Defendant cites the deposition transcript and explains that Kimble really testified that someone, who she does not remember, told her that a clerk got touched on the breast. All of the evidentiary objections are similar in nature. For each of defendant's evidentiary objections, the court acknowledges and relies upon the true testimony of each

deponent. The court also acknowledges and relies upon the original portions of the deposition transcripts that plaintiff has highlighted in its Reply to Defendant's Opposition to EEOC's Motion for Partial Summary Judgment [143].

### 1.    Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), plaintiff moves to strike defendant's Affirmative Defenses 16, 18, 19, 20, 22, 24, 26, 27, and 30. Rule 12(f) provides, in relevant part, that a court may strike any redundant, immaterial, impertinent, or scandalous matter "on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Defendant filed its Answer and Affirmative Defenses to First Amended Complaint [54] on June 4, 2012, and plaintiff did not move to strike these affirmative defenses until December 31, 2012. Therefore, plaintiff's motion to strike is untimely and denied.

In the alternative, plaintiff requests summary judgment on the same affirmative defenses. During oral argument, defendant argued that requesting summary judgment on an affirmative defense is procedurally inappropriate, directing the court to *Kerzman v. NCH Corp.*, No. C05-1820JLR, 2007 WL 765202 (W.D. Wash. Mar. 9, 2007). In *Kerzman*, the court held that a motion for summary judgment on an affirmative defense is properly construed as a motion to strike. *Id.* at *7. This court declines to follow *Kerzman* for several reasons. First, Federal Rule of Civil Procedure 56(a) expressly permits a party to move for summary judgment on a "claim *or defense*." (emphasis added). Second, in *E.E.O.C. v. United States Bakery, Inc.*, No. 03-64-HA, 2004 WL 1774214, *9 (D.Or. Aug. 9, 2004), this court granted summary judgment for plaintiff as to the defendant's affirmative defense. Finally, a motion that attacks the substance of

5 - OPINION AND ORDER

defendant's affirmative defenses rather than the form of the pleading should be treated as a motion for summary judgment, allowing the court to consider facts outside the pleadings. To hold otherwise would render this court unable to rule on a timely motion to strike. Accordingly, each affirmative defense will be analyzed to determine if it satisfies the standards to survive summary judgment.

### 2.    Affirmative Defenses 16 and 18.

Plaintiff seeks summary judgment on defendant's Affirmative Defenses 16 and 18. Affirmative Defense 16 states, "Plaintiff's First Amended Complaint fails to state a claim upon which relief can be granted." Affirmative Defense 18 states, "Plaintiff's First Amended Complaint is barred or precluded because the unidentified alleged 'similarly situated' individuals have failed to state a timely claim or have failed to state a claim upon which relief can be granted."

In support of its motion, plaintiff asserts that its First Amended Complaint satisfies the threshold of "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Defendant argues that plaintiff has failed to meet the pleading standard because it did not allege that each class member complained to defendant's managers about the alleged harassment. In a case such as this, in which the Title VII claim against the employer involves harassment by an individual that does not supervise the claimant, "plaintiff must prove that the employer was negligent, *i.e.* that the employer knew or should have known of the harassment but did not take adequate steps to address it." *Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001). Accordingly, plaintiff need not allege that each class member complained about the harassment, but rather plaintiff need only allege that defendant knew or

should have known that the harassment was occurring and did not address it adequately. Plaintiff's First Amended Complaint alleges that defendant was made aware of Janac's harassment and failed to respond effectively. First Am. Compl. at ¶ 8. Plaintiff need not allege more.

Defendant also argues that plaintiff failed to state a claim upon which relief can be granted, because the conduct alleged by plaintiff on behalf of Courtney McMurray is time-barred. Specifically, defendant argues that the allegation that Janac grabbed McMurray's breast in 2007 is outside the applicable statute of limitations. A discrimination charge under Title VII shall be filed within 300 days of the alleged unlawful employment practice in jurisdictions, such as Oregon, that have joint worksharing agreements between the EEOC and an equivalent state agency. 42 U.S.C. 2000e-5(e); *Gamez-Morales v. Pac. Nw. Renal Serv., LLC*, No. 05-546-AS, 2006 WL 2850476, at *15 (D. Or. Sep. 29, 2006), *aff'd*, 304 Fed. Appx. 572 (9th Cir. 2008). In this case, the parties agree that the relevant statutory period began on November 18, 2008. The evidence shows that Janac grabbed McMurray against her will on two occasions in 2009. Therefore, plaintiff's claim on behalf of McMurray is not time-barred.[2]

Finally, defendant asserts that plaintiff's allegation on behalf of O'Neal, stating that Janac grabbed the breast of O'Neal, was neither severe nor pervasive enough to state a Title VII sexual

---

[2] In defendant's Response in Opposition to Motion for Summary Judgment (defendant's Response) [134], it references a similar argument in its Memorandum in Support of its Motion for Partial Summary Judgment [122]. There, defendant argues that this court should not consider McMurray's alleged incident with Janac in 2007 when determining if the hostile work environment was severe or pervasive, because this incident was shortly followed by McMurray's six-month hiatus from working for defendant. This argument is very similar to, but distinct from, the statute of limitations argument, and it will be addressed when defendant's Motion for Partial Summary Judgment is addressed, below.

harassment claim. *See Meritor Savings Bank, FSB v. Vinson*, 536 U.S. 101, 115 (2002) ("For

sexual harassment to be actionable, it must be sufficiently severe or pervasive to alter the

conditions of the victim's employment and create an abusive working environment."). In order to

satisfy the pleading standards, a complaint must only contain "sufficient factual matter, accepted

as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009). Defendant argues that the harassment of O'Neal does not meet the pleading

standard, because it alleges only an isolated instance in which Janac grabbed O'Neal's breast.

However, "one incident of sexual harassment could establish an actionable claim if it is

sufficiently severe." *Woods v. Champion Chevrolet*, 35 Fed. Appx. 453, 457 (2002). If the

harassment is severe, then plaintiff need not allege a repetitive series of incidents.    *Brooks v.

City of San Mateo*, 229 F.3d 917, 926 (9th Cir. 2000) (citation omitted). This is especially true

for harassment that is physical in nature. *Id.* Although plaintiff alleged that O'Neal was harassed

on only one instance, because plaintiff alleges a physical assault, it has stated a claim that is

plausible on its face.[3]

Based on the foregoing, defendant has raised no genuine issue of material fact with

respect to Affirmative Defenses 16 and 18. Therefore, plaintiff's Motion for Partial Summary

Judgment on Affirmative Defenses 16 and 18 is granted.

### 3.    Affirmative Defense 19

Plaintiff requests summary judgment on defendant's Affirmative Defense 19. Affirmative

---

[3] By concluding that plaintiff's allegations concerning O'Neal sufficiently stated a claim
upon which relief can be granted, this court is not concluding that plaintiff has presented enough
evidence to survive summary judgment with respect to that claim. Summary judgment on the
same claim is a separate issue reserved for the court's discussion of defendant's Motion for Partial
Summary Judgment.

Defense 19 states, "Any failure by the named individuals or any unidentified alleged 'similarly situated' individual to mitigate alleged damages bars or limits any recovery herein." Plaintiff argues that this is not a valid affirmative defense, because a plaintiff is not required to produce medical testimony to support a claim of emotional distress. *Passantino v. Johnson & Johnson Consumer Prod.*, 212 F.3d 493, 513 (9th Cir. 2000).

In response, defendant argues that, when seeking damages for emotional distress, plaintiff fails to mitigate those damages when it fails to seek psychological counseling. Defendant argues that, in such circumstances, damages for emotional distress should be reduced. In addition to *Petroci v. Transworld*, No. 12-00729, 2012 WL 5464597 (W.D.N.Y. Oct. 19, 2012), upon which defendant relies, there are several cases indicating that the imposition of a duty to mitigate emotional damages is appropriate. *See Neal v. Director, Dist. of Colombia Dept. of Corrections*, No. 93-2420, 1995 WL 517249, at *15 (D.D.C. Aug. 9, 1995) (holding that plaintiff failed to mitigate front pay damages by refusing to take anti-depressants); *In re Air Crash Disaster at Charlotte, N.C. on July 2, 1994*, 982 F. Supp. 1101, 1111 (D.S.C. 1997) (in holding that even though plaintiff refused to take antidepressants, he did not fail to mitigate damages, the court explained that a plaintiff has the duty to mitigate damages and the "court can consider whether that person has failed to follow the advice of their physician or other treating professional") (citation omitted); *Salas v. United States*, 974 F. Supp. 202, 211 (W.D. N.Y. 1997) (concluding that plaintiff cannot be charged with a failure to mitigate damages because she made reasonable efforts to treat and cure her condition); *Baker v. Dorfman*, No. 97-7512-DLC, 1999 WL 191531, at *6 (S.D.N.Y. Apr. 6, 1999) (holding that a jury could have reasonably concluded, after receiving an instruction on mitigation of damages related to pain and suffering, that plaintiff took

9 - OPINION AND ORDER

reasonable steps to alleviate his distress); *Rogan v. Lewis*, 975 F. Supp. 956, 966 n.14 (S.D. Tex 1997) (explaining that plaintiff's failure to exhaust administrative remedies may be relevant to plaintiff's failure to mitigate emotional damages); *Chuy v. Philadelphia Eagles Football Club*, 431 F. Supp. 254, 263-64 (D.C. Pa. 1977) (upholding a jury instruction on mitigation of emotional damages).

The Ninth Circuit's decision in *Gomez v. Am. Empress Ltd. P'ship*, 189 F.3d 473 (9th Cir. 1999) is also persuasive. In *Gomez*, the plaintiff hurt his back while working and could no longer perform his job duties. He sued his employer for economic injuries, pain and suffering, and emotional injuries. The trial court reduced the plaintiff's award by twenty-five percent, reasoning that if plaintiff had tried to find other employment or otherwise mitigated his damages, both economic *and non-economic* damages would have been reduced. *Id.* at 2. This holding indicates that the Ninth Circuit supports the imposition of a duty to mitigate emotional damages.

Plaintiff has failed to direct this court to a case that indicates that the duty to mitigate is inappropriate to limit emotional damages. In consideration of the arguments from both parties and the relevant case law, this court holds that the failure to mitigate emotional damages is a valid affirmative defense.

In support of this affirmative defense, defendant cites class members' depositions in which they testify that they have not consulted a professional despite continued emotional pain. *See e.g.,* McMurray Dep. 122:9-16; 129:16-22. Accordingly, defendant has raised a genuine issue of material fact with respect to Affirmative Defense 19 and plaintiff's Motion for Partial Summary Judgment with respect to Affirmative Defense 19 is denied.

///

10- OPINION AND ORDER

### 4.    Affirmative Defense 20.

Plaintiff seeks summary judgment on defendant's Affirmative Defense 20.  Affirmative

Defense 20 states, "The named individuals' claims or the claims of any unidentified alleged

'similarly situated' individual seeking emotional distress damages or damages for alleged stress

related to the workplace are barred in whole or in part by the exclusive remedy under Oregon's

Worker's Compensation law."  Plaintiff argues that allowing a Title VII sexual harassment claim

to be barred by a state worker's compensation law would run afoul of the Supremacy Clause of

the United States Constitution.  To support their respective positions, plaintiff relies upon, and

defendant attempts to distinguish, this court's opinion in *Von Heeder v. Safeway, Inc.*, No. 00-25-

HA, 2001 WL 1703092 (D. Or. Oct. 11, 2001).

In *Von Heeder*, defendant moved for summary judgment, contending that plaintiff's

hostile work environment claims were barred by the exclusive remedy provision of Oregon's

Worker's Compensation law.  2001 WL 1703092, at *9.  In its opinion, this court admonished

defendant for failing to acknowledge case law that clearly rejects this position.  *Id.* (citing *Rose v.*

*Baystate Med. Ctr., Inc.*, 985 F. Supp. 211, 215 n.1 (D. Mass. 1997); *Karcher v. Emerson Elec.*

*Co.*, 94 F.3d 502 (8th Cir. 1996), *cert. denied*, 520 U.S. 1210 (1996); *Lopez v. S.B. Thomas, Inc.*,

831 F.2d 1184, 1190 (2nd Cir. 1987) (citations omitted)).

In the present case, defendant attempts to distinguish *Von Heeder* by noting that that case,

as well as the decisions cited therein, involved a vicarious liability standard - not a negligence

theory like the one at issue in this case.  However, plaintiff does not proceed under the common

law theory of negligence.  Rather, plaintiff's claims arise from Title VII of the Civil Rights Act of

1964, a federal statute, and plaintiff imputes defendant's liability through a negligence standard.

*See Torres v. Pisano*, 116 F.3d 625 (2nd Cir. 1997) (separating its analysis of defendant's liability under Title VII negligence and common law negligence). Therefore, defendant fails to distinguish the present case from those that clearly state that Title VII claims are not barred by a state worker's compensation law. Defendant has failed to raise a genuine issue of material fact with respect to Affirmative Defense 20, and summary judgment is granted for plaintiff on that issue.

### 5.    Affirmative Defense 24

Plaintiff also seeks summary judgment as to defendant's Affirmative Defense 24. Affirmative Defense 24 states, "This court lacks jurisdiction over the claims of O'Neal, Settle, Dudley, Humiston, and McMurray and the unidentified alleged 'similarly situated' individuals as no EEOC charge was filed by such individuals." In its Response, defendant withdrew Affirmative Defense 24; therefore, plaintiff's request for summary judgment as to that affirmative defense is denied as moot.

### 6.    Affirmative Defenses 22, 26, 27, and 30.

Finally, plaintiff requests summary judgment on defendant's Affirmative Defenses 22, 26, 27 and 30. In defendant's Response, it withdrew each of these affirmative defenses.

In Title VII harassment cases in which the harasser is a supervisor, the employer can be held vicariously liable. In such cases, the employer may raise an affirmative defense, commonly referred to as the *Ellerth/Faragher* defense. *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 877 (9th Cir. 2001) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998)). To prevail on this affirmative defense, the defendant must prove that (1) "the employer exercised reasonable care to prevent and correct

12- OPINION AND ORDER

promptly any sexually harassing behavior"; and (2) "that the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Ellerth*, 524 U.S. at 765.

When the harasser is not a supervisor, like in the present case, the burden shifts. Plaintiff must prove that the employer was negligent, *i.e.* that the employer knew or should have known of the harassment but did not take adequate steps to address it. *Swinton*, 270 F.3d at 803.

Affirmative Defenses 26, 27, and 30 are essentially recitations of the *Ellerth/Faragher* affirmative defense, which is not available in this case. Plaintiff has the burden to prove that the employer knew of the harassment and failed to address it adequately. Therefore, Affirmative Defenses 26, 27, and 30 are not valid affirmative defenses and plaintiff's request for summary judgment with respect to Affirmative Defenses 26, 27, and 30 is denied as moot.

Affirmative Defense 22 is unlike Affirmative Defenses 26, 27, and 30 in that plaintiff need not prove that class members pursued internal procedures or contractual obligations to address the harassment before recovering from defendant. Still, defendant withdrew this affirmative defense in its response. Therefore, plaintiff's request for summary judgment as to Affirmative Defense 22 is similarly denied as moot, but is waived henceforth. Fed. R. Civ. P. 8©.

During oral argument, plaintiff asserted that, in addition to seeking summary judgment on Affirmative Defenses 16, 18, 19, 20, 22, 24, 26, 27, and 30, its motion also seeks summary judgment on the issue of defendant's negligence. Regardless of whether this issue was actually raised in plaintiff's briefing, the motion as to defendant's negligence is denied. "Summary judgment is rarely appropriate in negligence cases." *Bryant v. Technical Research Co.*, 654 F.2d

13- OPINION AND ORDER

1337, 1346 n.10 (9th Cir. 1981). "The jury should decide the reasonable nature of the conduct at issue." *Id.* In the present case, plaintiff has the burden to prove that defendant knew or should have known of Janac's conduct and failed to take adequate remedial measures. *Swinton,* 270 F.3d at 803. Defendant provides numerous examples of actions that store managers took in response to Janac's conduct. Def.'s Resp. at pp. 10-15. Whether these actions were reasonable is a question for the jury.

## B.   DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

### 1.   Evidentiary Objections

As an initial matter, defendant set forth evidentiary objections to several exhibits and statements that plaintiff used in its Opposition to Defendant's Motions for Partial Summary Judgment (plaintiff's Response) [136]. Plaintiff responded to defendant's objections in its Surreply [145].

First, defendant argues that Exhibit K to the Declaration of Damien Lee in Support of Plaintiff's Response (Lee Declaration) [137] contains inadmissible hearsay and was not properly authenticated. Exhibit K is an email from Darla Anderson and forwarded by Rosemary Tolson to Kenneth Bailey regarding the termination of Humiston. "Documents produced by a party in discovery are deemed authentic when offered by the party-opponent." *Elston v. Toma,* No. 01-1124-BR, 2004 WL 1048132, at *3 (D. Or. Apr. 15, 2004) (citing *Orr v. Bank of Am.*, 285 F.3d 764, 777 n.20 (9th Cir. 2002). Additionally, the email in Exhibit K constitutes an admission under Federal Rule of Evidence 801(d)(2). Therefore, Exhibit K is admissible; however, it is unnecessary for this court to rely on it for the current motions.

Second, defendant argues that Exhibit L to the Lee Declaration should be stricken for the

same reasons. Exhibit L is a Termination Report prepared by defendant for Humiston. Exhibit L

is authentic because it was produced by defendant during discovery. *Id.* Also, it is not hearsay

because it constitutes an admission. FRE 801(d)(2).

Third, defendant argues that Exhibit N to the Lee Declaration should be stricken for the

same reasons. Plaintiff claims that Exhibit N are notes taken by EEOC Investigator Bryne Moore

when he interviewed Humiston on October 27, 2010. Plaintiff offers Exhibit N solely for the

purpose of clarifying the date on which the EEOC first contacted Humiston about Morrow's

EEOC charge, and the date she learned that the EEOC could file a lawsuit against defendant

because of Janac's harassment. The date of the interview is not hearsay. Additionally, with its

Surreply, plaintiff submitted a Supplemental Declaration of Bryne Moore [147] in which Exhibit

N is adequately authenticated. Therefore, Exhibit N is admissible.

Fourth, defendant argues that Exhibit S to the Lee Declaration should be stricken for the

same reasons. Plaintiff claims that Exhibit S is a complaint filed by Morrow and McMurray

against Janac in the Clackamas County Sheriff Office. Exhibit S sets out factual findings from a

legally authorized investigation and it does not indicate a lack of trustworthiness; therefore, it

falls under the public record exception to the rule against hearsay. FRE 803(8). Because the

declarant could be called to testify at trial, Exhibit S is admissible. *Overby*, 1995 WL 860298, at

*3.

Fifth, defendant argues that Exhibit U to the Lee Declaration should be stricken because it

is duplicative, unreliable, and irrelevant. Exhibit U is a demonstrative exhibit which establishes

a time line for the relevant events. As defendant points out, several of plaintiff's references in

Exhibit U fail to direct the court to factual support for the relevant assertion. Accordingly, the

court does not find the time line helpful. Plaintiff agreed that the court should disregard Exhibit U if it does not find it helpful; therefore, Exhibit U is stricken.

Defendant also argues that several of plaintiff's statements should be stricken. First, defendant asserts that Footnote 1 of Exhibit U to the Lee Declaration should be stricken because it constitutes hearsay and is unsupported by the evidence. Footnote 1 states that Brittany Knoke and Tiffany Tomlinson were also sexually harassed by Janac, but "are not EEOC Class Members for a variety of reasons, *e.g.,* fear of retaliation." Because the entirety of Exhibit U is stricken above, this argument is moot.

Next, defendant argues that the following sentence from page twenty-four of plaintiff's Response should be stricken: "Defendant's motion for partial summary judgment is telling because it concedes that there is sufficient evidence for Charging Party Morrow and Class Members Settle and Dudley to proceed to trial." This sentence is merely argument, but the court acknowledges that defendant made no such explicit concession.

Defendant argues that the following sentence should be stricken from plaintiff's Response: "LPM Dunlap conceded under oath that he did not take any further action after he learned of this sexual assault of 16-year old McMurray." Again, this sentence is argument. However, the court acknowledges that Dunlap did not make such an explicit concession under oath.

Defendant argues that the following sentence on page five of plaintiff's Response should be stricken. "[Humiston] complained to Assistant Manager Dustin Cop, Apparel Manager Pat McPhee, Assistant Apparel Manager Darla Anderson, and LPM Ironside." Defendant asserts that Humiston did not testify that she complained to Cop or Ironside, and plaintiff agrees. Therefore,

16- OPINION AND ORDER

the sentence is stricken accordingly.

Finally, defendants move to strike the following sentence on page twenty-five of plaintiff's Response: "they were forced to depend on each other for protection from Janac." Again, this sentence is merely argument, but will be stricken because it is immaterial to the current motions.

**2.    Substantive Argument**

In its Motion for Partial Summary Judgment, defendant argues that the harassment at issue was not sufficiently severe or pervasive to support a Title VII sexual harassment claim for O'Neal, McMurray, Atlee, and Humiston.  Title VII forbids an employer to discriminate against an individual with respect to her terms or conditions of employment because of such individual's sex.  42 U.S.C. § 2000e-2(a)(1).  To establish liability under a hostile work environment theory, as plaintiff attempts to do in the present case, plaintiff must demonstrate that "(1) she was subjected to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (internal quotation omitted).   A hostile work environment involves cumulative or repeated conduct that may occur over a period of days or years, and, "in direct contract to discrete acts, a single act of harassment may not be actionable on its own." *Nat'l R.R. Passenger v. Morgan*, 536 U.S. 101, 115 (2002)(citation omitted).

Additionally, "[t]he working environment must both subjectively and objectively be perceived as abusive." *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 20-21 (1993).  Objective hostility is determined by examining the totality of the circumstances and whether a

17- OPINION AND ORDER

reasonable person with the same characteristics as the victim would perceive the workplace as hostile. *Id.* Relevant factors include the frequency of the misconduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Harris,* 510 U.S. at 23. While occasional "annoying" or "merely offensive" comments do not constitute sexual harassment, sexual-based conduct that is abusive, humiliating, or threatening is sufficient. *Steiner v. Showboat Operating Co.,* 25 F.3d 1459, 1463 (9th Cir. 1994) (citing *Harris,* 510 U.S. at 21-22). "It is enough, rather, if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Id.* To determine whether the working environment was subjectively abusive the court must look at the effect on the employee's psychological well-being. *Harris,* 510 U.S. at 23.

### a.    Kelly O'Neal

Kelly O'Neal was the manager of the seafood department at the Oak Grove Store. As the manager of a department, O'Neal received complaints from female employees about Janac's conduct. O'Neal began receiving complaints about Janac in 2005, when a female employee reported that Janac would bump into her. O'Neal also learned that McMurray and Brittany Knoke were physically assaulted when an old man put his hand down their shirts. Finally, O'Neal learned about multiple incidents in which Janac touched, or attempted to touch, Settle and Morrow against their will. O'Neal also testified about an incident in which she was touched by Janac. According to O'Neal, in 2009, Janac "poked" her breast before laughing and walking away.

Defendant argues that plaintiff cannot support a claim of hostile work environment on

behalf of O'Neal, because her experience with Janac was not subjectively or objectively abusive. Objectively, defendant asserts that a reasonable woman in O'Neal's position would not have found Janac's conduct sufficiently severe or pervasive to alter the conditions of her employment. In so asserting, defendant argues that Janac harassed O'Neal on a single occasion - when he poked her breast in 2009.

However, this court must analyze the totality of the circumstances in determining whether the harassment was sufficiently severe or pervasive. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 117. The totality of the circumstances must include hostility not directly targeted at the plaintiff, if the plaintiff had knowledge of the prior misconduct. *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1036 (9th Cir. 2005); *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1117-18 (9th Cir. 2004). In addition to being poked in the breast by Janac, O'Neal learned of at least five other instances in which Janac physically assaulted female employees. "[M]ore weight should be given to acts committed by a serial harasser if the plaintiff knows that the same individual committed the offending acts in the past." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 337 (6th Cir. 2008). O'Neal was aware that Janac grabbed the breasts of Morrow and Settle, put his hand down the shirts of McMurray and Knoke, and grabbed the knee of Morrow. Under such circumstances, it is reasonable to assume that the repeated harassment is condoned and will continue. At a minimum, this pattern of conduct creates a jury question as to whether a reasonable woman would have felt that Janac's continued behavior created a hostile work environment.

Defendant asserts that plaintiff is relying too heavily on "workplace gossip" about Janac to support its hostile work environment claims. In support, defendant discusses this court's

holding in *Lampert v. Clackamas County*, No. 03-828-HA, 2005 WL 730636, at *6 (D. Or. Mar.

30, 2005).  In *Lampert*, this court found that the harassment of others, outside the presence of

plaintiff and learned only through hearsay, could not sustain plaintiff's claim.  However, the facts

in *Lampert* are significantly different than the facts of the present case.  In *Lampert*, the plaintiff

did not allege that harassment was pervasive in her workplace.  *Id.* at *7.  In fact, she did not

even work in the same location as those who alleged the prior harassment in that case; therefore,

she would not feel vulnerable to the repeated physical harassment herself.  *Id.*  In contrast, all

accounts of Janac's harassment occurred within the Oak Grove store, where all class members

worked daily.  All class members had heard first-hand accounts of Janac's harassment of other

employees, and therefore each was aware of her own vulnerability.  While it remains a question

whether Janac's harassment of each class member was pervasive, evidence suggests that his

harassing conduct in the Oak Grove store generally was widespread.  *See* Washington Dep.

37:16-18 ("there were too many associates complaining about the exact same thing");  McMurray

Dep. 105:22 ("It was very widely known that [that] customer was a problem.").  Repeatedly

hearing accounts of the harassment dealt by one man, may make a reasonable woman feel unsafe

in her work environment.  *Vinson v. Taylor*, 753 F.2d 141, 146 (D.C. Cir. 1985) ("Even a woman

who was never herself the object of harassment might have a Title VII claim if she were forced to

work in an atmosphere where such harassment was pervasive.").

Defendant also relies on *Leibovitz v. New York Transit Authority*, 252 F.3d 179 (2nd Cir.

2001) in arguing that this court should not place significant weight on the victim's knowledge of

Janac's harassment of others, because *Leibovitz* was cited positively by this court in *Lampert*.

However, as in *Lampert*, the plaintiff in *Leibovitz* worked in a part of the premises separated

from the women who were previously harassed, and they were harassed by a supervisor that did not supervise the plaintiff. In fact, the plaintiff was not even aware of the alleged previous harassment while it was happening; therefore, she should not have felt threatened in her daily work environment. In the present case, the class members were potentially a victim of Janac's conduct on any given day. Accordingly, it would be more reasonable for them to feel unsafe in their work environment. Therefore, significant weight should be attributed to each class members' knowledge of Janac's harassment of other employees.

Next, defendant argues that O'Neal did not find Janac's conduct subjectively hostile or abusive. In support, defendant highlights that O'Neal did not report the incident in which Janac poked her breast; she did not feel that it affected her ability to do her job; and she did not feel emotionally upset. Considered alone, the evidence highlighted by defendant does demonstrate that O'Neal did not find the incident in which Janac poked her breast subjectively hostile. However, there is also evidence that suggests otherwise. First, O'Neal testified that she was "in shock" directly after the incident, and she "couldn't believe he reached out and touched [her]". O'Neal Dep. 68:23-24. Second, in response to questions concerning her motivations in this suit, O'Neal explained that she hopes that defendant institutes a program to appropriately address similar situations in the future. She described it as "[a] program for other women - - for other employees of Fred Meyer that they feel safe." *Id.* at 10:17-20. Such a statement indicates that O'Neal felt that Fred Meyer employees were unsafe as Janac's conduct continued. Finally, O'Neal testified that Settle requested that she "watch if [Janac] happened to come into the department to let [Settle] know or to be in the same area so somebody else was there and he wouldn't touch her again." *Id.* at 61:22-62:1. Courts require that the harassing conduct be so

21- OPINION AND ORDER

severe or pervasive that it alter the terms or conditions of plaintiff's employment. Because O'Neal took on the responsibility of protecting employees from customers like Janac, it is clear that the terms and conditions of her employment had changed.

Based on the foregoing, plaintiff has raised a genuine issue of material fact as to whether O'Neal was subjected to conduct that was sufficiently severe or pervasive as to alter the conditions of her employment. Therefore, with respect to O'Neal, defendant's Motion for Partial Summary Judgment is denied.

### b.    Courtney McMurray

Courtney McMurray worked at defendant's Oak Grove store on three separate occasions between August 24, 2006 and September 16, 2010. She began working for defendant at the age of sixteen. In January 2007, Janac approached McMurray, and McMurray asked if he needed help. According to McMurray, Janac responded, "I think I found it." McMurray Dep. 32:11. Then, Janac put his hand down McMurray's shirt. McMurray struck Janac, and Janac responded, "Those were nice." *Id.* at 33:2.

In February 2007, McMurray moved to Utah and discontinued her employment at the Oak Grove Store. McMurray returned to work at the Oak Grove store from July 2007 to some date in the fall of 2007. During this second period of employment, McMurray saw Janac on one occasion, as he sat by the employee time clock. Janac did not interact with McMurray at that time, and McMurray did not report Janac's presence to anyone at the store.

McMurray's third employment at the Oak Grove store occurred between July 2008 and August 2009. McMurray testified that she had three experiences with Janac that concerned her during that period. First, McMurray observed Janac approaching Settle. Fearing for her

22- OPINION AND ORDER

coworker, McMurray placed herself between Janac and Settle. According to McMurray, Janac grabbed McMurray's shoulder and said, "let me take you girls somewhere." McMurray Dep. 51:4-52:20. Second, McMurray observed Janac staring at a little girl as he followed her and her mother through the store. Lastly, Janac approached McMurray one evening and grabbed her forearm as she was packing away the products in the seafood counter for the night. Leaving the counter open and the products exposed, McMurray retreated to behind the seafood counter, and Janac began to follow. McMurray told Janac that he was not allowed behind the counter. Janac stood at the entrance to the area behind the counter, blocking McMurray's only exit for a moment before he left. McMurray had also learned that Janac touched Settle and Morrow against their will, and knew that an old man had grabbed Brittany Knoke.

Defendant argues that Janac's conduct toward McMurray was not sufficiently severe or pervasive as to alter the terms and conditions of her employment. Defendant requests that, when analyzing the totality of the circumstances, this court disregard the instance in which Janac put his hand down McMurray's shirt in 2007, as it was not a continuing violation. However, if acts occurring prior to the relevant statutory period are sufficiently related to acts occurring within the 300-day filing period, the court may find a continuing violation and consider those previous acts when determining whether a hostile work environment existed. *Nat'l R.R. Passenger,* 536 U.S. at 117-118.

Defendant directs this court to *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710 (3rd Cir. 1997), *cert. denied*, 522 U.S. 1128 (1998). In *Konstantopoulos*, the Third Circuit upheld a district court opinion in which the court found the conduct at issue insufficiently severe or pervasive to support a hostile work environment claim. *Id.* at 715-718. In so doing, the court

disregarded incidents of sexual harassment that occurred prior to the plaintiff's seven-month hiatus from work, and analyzed only the most recent incident in isolation. *Id.* The court reasoned that the prior events should be excluded from its analysis because "the effects of the harassment that occurred from April through August 1989 had dissipated by the time that [the plaintiff] returned to work in April 1990". *Id.* at 716.

In the present case, enough time had not passed for the effects of the harassment in the Oak Grove store to dissipate. In fact, harassment in the store continued during McMurray's six-month hiatus in 2007. Immediately upon her return to work for defendant, McMurray learned that an old man grabbed Brittany Knoke's buttocks. While it was unclear whether the old man to which Knoke referred was Janac, the incident would indicate that sexual harassment continued at the Oak Grove store. Moreover, McMurray testified that, despite her time away from the Oak Grove store, she altered her habits to avoid Janac upon her return, as Janac was still allowed to frequent the store. These lasting manifestations of McMurray's fear demonstrate that the effects of Janac's harassment had not dissipated during her hiatus. While defendant is correct that McMurray made a deliberate decision to return to work at the Oak Grove store, this decision does not force this court to conclude that the effect of Janac's conduct had dissipated. Rather, many factors can influence the employment that one chooses to seek.

Furthermore, defendant's argument ignores cases that have come to the opposite conclusion. In *Rowe*, the Eighth Circuit explained that even a lengthy hiatus in harassment does not necessarily establish that prior harassment should not be considered as a continuing violation. 381 F.3d at 781. Instead, it is more important to consider whether it was the same harasser committing the same harassing acts; whether the employer was made aware of the earlier

24- OPINION AND ORDER

harassment; and whether there was evidence of intervening acts on the part of the employer. *Id.;*
*see also Nat'l R.R. Passenger*, 536 U.S. at 118 (noting that where harassment occurs on days 1-
100 and day 401, "it does not matter whether nothing occurred within the intervening 301 days so
long as each act is part of the whole.").

Defendant also argues that courts have found that intervening acts of the employer
preclude a finding of a continuing violation. *Stewart v. Mississippi Transp. Comm'n*, 586 F.3d
321, 328 (5th Cir. 2009). However, defendant fails to direct the court to an act by defendant that
severed the relationship between Janac's previous conduct and the conduct that occurred within
the relevant statutory period.

The facts of the present case support considering the 2007 incident as part of the totality
of the circumstances. The incidents all involved Janac, who engaged in similar physical
harassment before and after McMurray's hiatus. McMurray complained to her manager, and
Janac was allowed to continue to frequent the store before sexually harassing McMurray again.
While defendant took some action in response to employee complaints, no action disassociated
the 2007 incident and the incidents that occurred within the statutory period. Therefore, this
court will consider the 2007 incident between Janac and McMurray when determining whether
the harassment was sufficiently severe or pervasive.

In consideration of the totality of the circumstances, plaintiff raises facts indicating that
Janac's harassment of McMurray was both objectively and subjectively hostile. In addition to the
three times that she was touched by Janac against her will, McMurray learned that Knoke, Settle,
and Morrow had been sexually harassed in the Oak Grove store. The physical harassment
experienced by McMurray and her knowledge of several physical assaults on her co-workers

creates a jury question as to whether a reasonable woman would have felt her work environment was hostile. Defendant does not dispute that McMurray found Janac's conduct subjectively hostile. Therefore, there remains a genuine issue of material fact as to whether Janac's harassment of McMurray was sufficiently severe or pervasive. Defendant's Motion for Partial Summary Judgment with respect to McMurray is denied.

   **c.**  **Deborah Atlee**

   Deborah Atlee was working at a checkstand when she first interacted with Janac. While Atlee recognized Janac as a regular customer, she did not have any concerns about Janac's conduct at that time. As Atlee extended her hand to accept Janac's payment, he grabbed her hand and pulled her forward.

   Atlee's second problematic interaction with Janac occurred as Atlee processed the purchases of a mother whose child sat in an adjacent shopping cart. According to Atlee, Janac nudged the mother with his shoulder and flirted with the child. Atlee quickly completed the mother's transaction and then processed Janac's purchases. Once again, Janac grabbed Atlee's hand as she reached to accept his payment.

   Atlee's third problematic interaction with Janac occurred when Janac stood in Atlee's only exit from her checkstand. Janac reached a cupped hand in an attempt to touch Atlee's breast, but Atlee knocked his hand away. Then, Janac stood shaking the partition of Atlee's checkstand before walking away, laughing. After this incident, Atlee remembers several instances when Janac attempted to grab or successfully grabbed her hand in her checkstand line. Atlee also learned that Janac grabbed Morrow's breast and put his hand down the shirt of a girl in the deli.

   Defendant first argues that most incidents involving Atlee occurred outside the statute of

limitations and therefore should not be considered.  Specifically, defendant asserts that Atlee

initially testified that her last problematic interaction with Janac occurred in February 2008.

However, this is not clear from Atlee's testimony.  In fact, Atlee testified that she had several

problematic interactions with Janac after November 21, 2008.  Atlee Dep. 98:21-99:9.  Because

this court is obligated to view the facts in a light most favorable to the non-moving party,

plaintiff in this instance, it must assume that Janac attempted to grab Atlee's hand several times

during the relevant statutory period.  For the same reasons that this court refused to disregard

Janac's harassment of McMurray in 2007, this court finds Janac's interactions with Atlee a

continuing violation.  Accordingly, this court will consider interactions between Atlee and Janac

that occurred prior to the statutory period in determining whether his harassment was severe or

pervasive.

Defendant next argues that, even considering all of the problematic interactions between

Janac and Atlee, they are not sufficiently severe or pervasive to alter the terms or conditions of

her work environment.  Defendant asserts that the incidents were isolated and most had no sexual

overtone.  While the first two instances in which Janac grabbed Atlee's hand arguably had little

sexual overtone at the time, his attempt to grab her breast did.  "Physical sexual assault has

routinely been prohibited as sexual harassment under Title VII."  *Rene v. MGM Grand Hotel,*

*Inc.*, 305 F.3d 1061, 1065 (9th Cir. 2002) (citations omitted).  In turn, Janac's attempt to touch

Atlee's breast and Atlee's knowledge of Janac's sexual harassment of at least two other

employees, creates a sexual overtone for subsequent instances in which Janac attempted to touch

or successfully touched Atlee's hand.  Such repeated sexual harassment of Atlee, her observation

of inappropriate interactions with female customers, and knowledge of the sexual harassment of

27- OPINION AND ORDER

her coworkers, leaves a jury question as to whether a reasonable woman would find Janac's conduct sufficiently severe or pervasive.

Defendant also argues that Janac's interactions with Atlee were not subjectively pervasive, because Atlee reported only one incident with Janac and never complained to her union. While Atlee did only report one incident, she testified that Janac "creeped her out" and she proceeded to call her manager whenever she noticed that Janac was present in the store. This alone demonstrates that the terms and conditions of her work environment were subjectively altered. This court will not create a bar requiring a plaintiff to notify her management and complain to her union to demonstrate her subjective reaction to the harassment she experienced.

Based on the foregoing, plaintiff has raised a genuine issue of material fact as to whether Janac's conduct toward Atlee was sufficiently severe or pervasive as to alter the conditions of her employment. Therefore, defendant's Motion for Partial Summary Judgment with respect to Atlee is denied.

###    d.    Addie Humiston

Addie Humiston worked as a cashier in the apparel department. According to Humiston, she experienced several instances in which she would describe Janac's behavior as overly friendly. She observed him regularly attempting to get too close to female employees and attempt to touch them. Humiston testified that Janac would "open his arms wide and pull you in and try to press you against his whole body." Humiston Dep. 104:8-10. According to Humiston, Janac hugged her against her will on two separate occasions. Humiston testified that Janac also grabbed her arm twice in what she perceived as an attempt to pull her on his lap. On one occasion, Janac attempted to touch Humiston, as he sat on the bench near the employee time

clock. Humiston also witnessed the incident in which Janac attempted to touch Atlee's breast.
Finally, Humiston spoke with Settle, who told her that Janac grabbed her breast, and Humiston
learned of Janac's assault of Morrow.

Defendant argues that a reasonable person would not feel as though Janac's conduct
toward Humiston was sufficiently severe or pervasive as to alter the conditions of her
employment. However, Humiston's testimony indicates that problematic interactions with Janac
occurred regularly. She testified that he "always made attempts" to touch her. Humiston Dep.
112:4-7. Also, she testified that he would often touch female customers as they stood in line by
standing too close to them. She claims this "happened a lot" or "always . . . if it was a female at
my register." *Id*. at 105:13-14; 105:25-106:1; 106:9-11. In addition to Janac successfully
touching her on five separate occasions, Humiston had first hand knowledge of him attempting to
or successfully grabbing the breasts of three other employees. The regularity of this conduct
creates a jury question as to whether a reasonable woman would feel that Janac's conduct was
sufficiently severe or pervasive to alter Humiston's work environment.

Defendant also argues that Humiston did not subjectively perceive an actionable hostile
work environment. Defendant bases this assertion on the fact that Humiston did not report
Janac's conduct to the union, as she had reported one unrelated work complaint during the same
period. This is easily controverted through Humiston's testimony. First, Humiston did report
Janac's conduct to her department managers. Second, she testified that she regularly warned
female employees about Janac. "I know whenever I had the opportunity to see him and see a
female employee I would just say stay away from him." Humiston Dep. 144:5-7. It is clear that
Humiston perceived her work environment as hostile.

29- OPINION AND ORDER

Regardless of whether Janac's conduct toward Humiston can support a valid hostile work environment claim, defendant argues that Humiston had released defendant of all claims. On November 20, 2009, defendant sent Humiston's union a proposed settlement in which defendant agreed to suspend Humiston rather than fire her for mishandling a personal check. In exchange, defendant requested that Humiston release "any and all claims known or unknown that she has against [defendant] . . . including, but not limited to, any claims Ms. Humiston could bring under . . . Title VII of the Civil Rights Act of 1964." Warberg Decl. Ex. 9 at 31. Humiston and her union representative signed the agreement on November 25, 2009 acknowledging that she had ample opportunity to review the terms and that she agreed with those terms. According to her deposition testimony, Humiston does not remember reading the document and thought it to be a warning for her misconduct. Furthermore, she testified that she did not speak with an attorney or anyone from the union regarding this agreement.

On June 4, 2010, Humiston was notified that she was going to be terminated for mishandling another personal check. On June 9, 2010, Humiston contacted her union to learn her rights upon termination. On August 16, 2010, defendant sent Humiston's union another proposed settlement in which defendant would give Humiston the opportunity to reapply for employment in exchange for Humiston's release of all claims, including Title VII claims. On September 9, 2010, Humiston signed the agreement acknowledging that she had ample opportunity to review and agrees to its terms.

Plaintiff and defendant agree that *Stroman v. West Coast Grocery Co.*, 884 F.2d 498 (9th Cir. 1989), provides the appropriate factors to determine what constitutes a valid waiver of claims. To constitute a waiver, the release of claims must be "voluntary, deliberate and

informed." *Id.* at 884 F.2d at 462 (citations omitted).  As the Ninth Circuit explained, "[t]he

determination of whether a waiver of Title VII [claims] was voluntary, deliberate and informed is

predicated upon an evaluation of several indicia arising from the circumstances and conditions

under which the release was executed." *Id.*  The court adopted the following criteria: (1) whether

the release is voluntary depends on objective and subjective factors; (2) of primary importance is

clarity and lack of ambiguity in the agreement; (3) also important is plaintiff's education and

business experience; (4) whether there was a non-coercive atmosphere surrounding the execution

in the agreement; and (5) whether the employee had the benefit of legal counsel. *Id.*

First, the language and structure of the Humiston's agreements with defendant were clear

and unambiguous, but did not explain Humiston's releases in terms that she could understand.  In

the first paragraph of each agreement, defendant describes what it was offering to Humiston.  In

the second paragraph of each agreement, defendant explains what it expected of Humiston in

return.  The agreements explicitly state that Humiston "forever releases any and all claims known

and unknown that she has against Fred Meyers, Inc., . . . including, but not limited to, any claim

Ms. Humiston could bring under . . . Title VII of the Civil Rights Act of 1964." Warberg Decl.

Ex 9 at 31, 35.  However, the agreements do not define Title VII, and, as a result, Humiston had

no understanding of what she released through this agreement.  In fact, Humiston testified that

she did not even know that she had a claim against defendant, because at the time of the

agreement she had not yet been contacted by plaintiff.

Second, Humiston has little education and business experience.  Humiston did not

continue her education after graduating highschool in 1969.  Defendant argues that, despite

Humiston's lack of higher education, she has an understanding of employment-related rights

31- OPINION AND ORDER

evidenced by her experience taking concerns to the union. However, upon taking her previous concerns to the union, the union representative yelled at her, saying that she could be sued for slander. Therefore, her experience with her union was not a positive one. Moreover, Humiston's deposition testimony indicates that she did not understand the purpose or effect of the agreements she signed. In fact, she did not remember even reading the documents.

Third, it is undisputed that Humiston did not consult with an attorney. Moreover, the text of the settlement agreements did not inform Humiston that she had the right to consult with an attorney. While she did consult with her union upon her termination, she did not consult the union concerning the terms of the agreements at issue. Rather, she consulted her union because she wanted an opportunity to view the video of the events that lead to her termination. Humiston Dep. 154:2-11, 14-17; 155:9-21; Warberg Decl. Ex. 9 at 33.

Fourth, Humiston does not allege that defendant in any way pressured her into signing either agreement. Therefore, the fourth factor weighs in defendant's favor.

In consideration of all factors, Humiston's lack of formal education, her poor understanding of the effect of the agreements, and defendant's failure to inform her that she had the opportunity to consult counsel indicate that Humiston's waivers were not valid. Accordingly, Humiston did not waive her Title VII claims.

**CONCLUSION**

For the foregoing reasons, defendant's Motion for Partial Summary Judgment [121] is DENIED; plaintiff's Motion to Strike [126] is DENIED; and plaintiff's Motion for Partial Summary Judgement [126] is GRANTED in part and DENIED in part. Plaintiff's Motion for Partial Summary Judgment is GRANTED as to Affirmative Defenses 16, 18, and 20; DENIED

as moot as to Affirmative Defenses 22, 24, 26, 27, and 30; and DENIED as to Affirmative

Defense 19.

IT IS SO ORDERED.

DATED this _17_ day of June, 2013.

Ancer L. Haggerty
United States District Judge

33- OPINION AND ORDER